Before we begin, Judge Jordan and I would like to say that we're delighted to have the Honorable Paul Huck of Southwest Florida sitting with us today. He's an old friend. He's sat with the Court on numerous occasions. That said, we'll begin with Peterson v. Smith. Thank you, Your Honors, and may it please the Court. My name is Thomas Virch from the Appellate Clinic at the University of Georgia, appointed by the Court to represent Mr. Laakeem Peterson. Today, one of our third-year students, Mr. Chris Kelleher, will argue the case on our behalf, and I'll be sitting at the Council table. Thank you very much, Your Honors. Thank you, Your Honors, and may it please the Court. My name is Chris Kelleher, and I represent the appellant, Mr. Laakeem Peterson. Mr. Peterson's motion for a new trial should be granted for three principal reasons. First, the District Court abused its discretion when it denied Mr. Peterson's request for the appointment of counsel. Second, it was reversible error to instruct the jury that Mr. Peterson could only recover if he could identify which specific defendant broke his arm. And finally, the District Court made two flawed evidentiary rulings at trial that admitted propensity evidence while excluding key testimony for Mr. Peterson had his arm broken by five correctional officers and was immediately placed in solitary confinement where he remained for two weeks before he received adequate medical treatment. The guards admit to breaking his arm, but claimed that Mr. Peterson had a knife. And yet, no video evidence has ever surfaced to show Mr. Peterson with a knife. And in a video that was recorded immediately after the use of force, as per prison policy, the guards narrated on four occasions the events that led to the use of force and never once mentioned the presence of a knife. In addition, Your Honors, the correctional officers offered conflicting testimony at trial relating to when the alleged knife was discovered on Mr. Peterson. Can I ask you about that for a second? The video was played, right? Or portions of the video were played at trial? Yes, Your Honor. If the video doesn't reflect the officers mentioning a knife, then turning to your evidentiary issue about the District Court not allowing certain witnesses to testify about what was not said concerning a knife, how do you show prejudice? Your Honor, the central issue in the underlying trial was the presence of a knife or the lack thereof. The entire case hinged on whether there was a knife. In this case, Mr. Peterson attempted to elicit testimony from his only witnesses regarding whether the guards mentioned the presence of a knife while they were using force against him. Well, that wasn't the question, though. The question was, did you hear anybody before, during, or after the incident mention a knife? And I'm curious, what's the probative value of that broad question? Your Honor, while that was a broad question initially, Mr. Peterson did attempt to sharpen the question when he spoke to the judge at sidebar and said, Judge, the testimony I'm attempting to elicit is whether the inmates heard the guards say, he's got a knife, he's got a knife. This was far more probative than the testimony that the guards, or rather, that the witnesses were able to provide when the judge allowed him to rephrase his question, which was simply, do you recall me having a knife on the day of the incident? This was key testimony because it was probative of whether Mr. Peterson had a knife and whether the guards had mentioned anything at trial. Didn't the judge say, if your witness can say, did you see him with a knife, that would be dismissible? The judge simply instructed Mr. Peterson that you can ask them if they remember you having a knife on the day of the incident. Right. And that was the testimony that he ultimately elicited. However, Your Honor, Mr. Peterson believed that it was far more probative to introduce evidence that the guards themselves never mentioned a knife, a reaction that you would certainly expect a correctional officer to have, had an inmate charged out of a cell with a knife, as was alleged in this case. And while allowing his witnesses to... What's the basis for that statement, that the guards were expected to make that statement during the incident? It could have, and I can see the other side, if they had mentioned, oh, he's got a knife, then the defendant might want to do that as an excited utterance or something like that. But what's the probative value of saying no one mentioned a knife during the incident? Your Honor, Mr. Peterson believed that the best evidence that he did not have a knife was the fact that the prison guards never said anything while they were using force against him about a knife. This was a reaction, again, that he would have expected the prison guards to have had he charged out of his cell with a knife. He believed that this was probative to the point of whether he had a knife, which was, again, the dispositive issue. But there were a couple of other issues, Your Honor, that were equally important in this case. I'll go to the other evidentiary issue, and that was that the district court admitted propensity evidence in this case. They admitted three disciplinary reports that Mr. Peterson received on prior occasions for the possession, or rather for having a prison shank in his cell. The defendants attempted to elicit this evidence or to admit this evidence under Rule 404B. The judge denied this, but then instructed the defendants, without them requesting, that they could use these reports to impeach Mr. Peterson's testimony if they wish to recall him to the witness stand as a witness on cross-examination. However, Your Honor, these reports were not admissible because the only possible grounds under which they could have been admitted was Rule 608B, which is a very narrow exception that allows for extrinsic evidence to be introduced if it is probative of a witness's character for truthfulness. In this case, Your Honor, whether Mr. Peterson had knives in his cell on prior occasions and received a disciplinary report— That was a discretionary call, counsel. Yes, Your Honor, it was. You have to tell us that the court necessarily abuses discretion. Yes, Your Honor, that is correct, and— I don't see how he could take the stand and not be subjected to that kind of cross-examination, putting aside introducing the evidence independently. Your Honor, it was an abuse of discretion because this evidence— It goes to the question of whether we intend to have a knife. He denied that he had a knife. Your Honor, sorry. His judicial position was he did not have a knife. The inference to be drawn from that is that he wouldn't have a knife, especially since it's unlawful to have the knife. And so I can't imagine not cross-examining him about the knife when he brings it up in the first place. Yes, Your Honor, but it— He's telling the jury that he wouldn't have had a knife. Yes, Your Honor, but it's important to draw the distinction. Mr. Peterson did not challenge the admission of the disciplinary report that he received on the day of the incident. He challenged the admission of three prior disciplinary reports— I understand that, but they're cross-examining him about his intent, whether or not he's the sort of person that would have a knife. Let me ask you a procedural question that maybe gets to part of what Judge Chauflet is trying to ask you. Mr. Peterson testified in his own case in chief at the beginning of trial, right? Yes, Your Honor. He was cross-examined by the defendants at that point. Yes, Your Honor. At that point, he was not asked about the prior disciplinary reports. Is that correct? That's correct, Your Honor. When did he get recalled back in the defense case? It was the very last thing that happened before the jury was charged. So, I mean, one possible argument is that you can't call a witness simply to impeach him. If that's the only purpose for calling him and you've had your shot to impeach him, then it may not be appropriate, but you still have to get over the abuse of discretion standard. Yes, Your Honor, and that point is well taken, and unfortunately that was not a position that we took in our brief. However, I would again point to the fact that this was an abuse of discretion because there is no legal standard or rule of evidence that admitted these. The judge denied them under Rule 404B, which goes to the intent and plan, as Judge Chauflet mentioned, and then admitted them under Rule 608B, which again is only admissible on cross-examination for the impeachment of a witness if the evidence is probative of an individual's character for truthfulness. As this Court has recognized, offenses that fall under that exception are those such as forgery, perjury, and fraud. These are face-to-face offenses that show an individual's lack of veracity that allows the jury to infer that they must be untruthful on the stand because they have an untruthful character. You're going to run out of time pretty soon. So could you address the District Court's so-called vicarious liability instruction? Yes, Your Honor, I'd be happy to. In this case, the judge instructed the jury on the standard of vicarious liability and informed them that Mr. Peterson could only recover if he could point to which specific defendant broke his arm. However, the judge himself recognized that Mr. Peterson, at the time his arm was broken, was on the floor in the fetal position covering his head, seeing four to five pairs of feet coming at him, but unaware of which foot struck the blow that broke his arm. The judge recognized when the defendants moved for a judgment as a matter of law that it was, quote, insane to expect Mr. Peterson to point to which specific defendant broke his arm. However, later in trial, the judge reversed himself and told the defendants, I'm going to give the vicarious liability instruction. This instruction read in part, Liability cannot be imposed on a defendant whose actions were not the proximate cause of any alleged injury. This language is important because it did not say a proximate cause or one of multiple proximate cause, but the sole proximate cause of an injury. This was a misstatement of the law and was misleading to the jury because Mr. Peterson did not sue the guards in an individual capacity or under the theory of respondeat superior. Mr. Peterson sued the prison guards as joint tortfeasors for acting in concert to break his arm. This jury instruction foreclosed Mr. Peterson from holding them liable for acting together, causing one indivisible injury. How do you get around the possible problem that Mr. Peterson, understandably being pro se, didn't object? Your Honor, while it is true that Mr. Peterson did not object, this court recognizes the futility exception to Rule 51, which permits an individual, or rather which excuses an individual from failing to object to a jury instruction if the basis for that objection is already known to the court and the objection would be futile. In this case, Your Honor, again, we would point back to the judge's own statements when the defendants moved for a matter of law. When he called this concept, this exact theory of recovery, quote, insane, the judge was aware of the problem with this jury instruction. And thus, Mr. Peterson was excused from renewing his objection because it would have been futile, because the judge already considered that position and then reversed it himself. To that extent, Your Honor, this should be reviewed under a de novo standard because it is futile for Mr. Peterson to object. Your Honor, viewed in the totality, with each of these individual evidentiary and jury instruction issues, it is clear that Mr. Peterson was prejudiced by the district court's denial of his motion for the appointment of counsel. Had counsel been appointed to Mr. Peterson, he would have been able to adequately present his case and would have been adequately able to convince the jury with a fair and impartial opportunity that he had the right to recover. He was prejudiced by this and that warrants reversal. Thank you. Mr. Goldberg. Good morning, Your Honors, and may it please the Court. Assistant Attorney General Brian Goldberg on behalf of the appellees. The jury verdict and trial court judgment in this case should be affirmed because the trial court did not abuse its discretion in its evidentiary rulings. The jury instructions were a correct statement of the law and the trial court did not abuse its discretion in not appointing counsel for Mr. Peterson in this civil matter. Mr. Goldberg. Go ahead, Paul. Let's talk about the questions about any observations concerning a knife. Yes, Your Honor. And put aside for now the issue of prejudice and put aside for now the issue of probative value as Judge Huck raised. This is pure evidentiary hearsay. Analysis. If the answer to the question that Mr. Peterson wanted to ask was that no one heard anybody say anything about a knife, how is that hearsay? Your Honor, because the form of the question was not asked to say was there silence, even assuming that silence... You don't have to ask it that way. If the answer to the question was nobody said anything, how could that be a hearsay answer? What's the statement? The statement, as appellants say, is that  the existence of a knife. That's why it's probative, but it doesn't say why it's hearsay. Tell me why that's hearsay. Because the silence is, in fact, a statement. It is implicitly a statement, perhaps, that there is no knife. Of limited probative value, we would argue, but it is a statement. In criminal cases, all the time, assuming Miranda warnings are duly administered, the government gets to ask a defendant who takes the stand, why didn't you tell the police this? Why did you stay silent about that? There are no hearsay issues with that sort of a question, assuming there aren't any constitutional problems with the question itself during interrogation. Why is there a difference here? Your Honor, are you asking about the... Individuals who testify are sometimes asked why their position at trial wasn't mentioned at an earlier point in time. Someone who is accused of drug trafficking might say, I was coerced into doing this. My family was threatened. And if that person was administered Miranda warnings upon arrest, then the prosecutor can certainly ask that defendant who takes the stand, why didn't you tell the police about that? Why did you remain silent? Why did you say nothing? That's not a hearsay statement. Why is it a hearsay statement for Mr. Peterson to ask about silence in this scenario? Your Honor, it's our position that in this case, it was, in fact, it was taken as a statement that there was no knife. I know I'm answering your question, Your Honor. We would argue from a harmless error standpoint that ultimately all of these questions survive abuse of discretion regarding evidence. And more importantly, ultimately, as an appellate court reviewing this case, there was no ultimate deprivation of Mr. Peterson's substantial right to a fair trial. As to these specific hearsay issues regarding the existence of a knife, he was able to elicit the same information from two of his witnesses, Mr. Newkirk and Mr. Bowen. But they weren't the defendants. It's a lot different when you have witnesses who might be biased in your favor and whom you're calling for a specific reason to have them say that than to have the people who are being accused of using excessive force to say the same thing. Those might have a little bit of a different impact on a jury. But you've answered my question, and I thank you for doing that. Thank you, Your Honors. And to that point, let me shift to the other evidentiary issue, and that is the prior incidence of possessing a knife. What was the evidentiary basis for the admission of that testimony? Because the judge reversed himself on the 404B admission and said it's only admissible as impeachment. What was the impeachment? Your Honor, the record does not state the express basis on the same impeachment. It does not say which particular rule of evidence. But our position is that because knives in the prison environment are in fact contraband, so there would be an element of concealment, and therefore that would be So your theory is it goes to his character for truthfulness? Yes, Your Honor. Okay. Is that the only basis? No, Your Honor. What other basis? Because I don't see that, frankly. It's not like forgery or something of that nature or testifying falsely under oath. So what's the next basis? Your Honor, the second basis would be the as we stated in our briefs, that he had placed the existence of him having access to a knife generally at issue, and he had said that he didn't have a knife in this case. And so the nature of a prison, that this would have implicitly, the jury could have found that that meant he never had knives. And this would have been an instance when he did to disprove his testimony that he didn't have a knife on this instance. I'm having a difficult time following that argument. In fact, you can't give me a specific legal basis, evidentiary basis to suggest that there may not be such a basis. There wasn't an inconsistent statement, was there? He didn't, for instance, say I've never had a knife before and I didn't have one on that occasion, which would allow him to be impeached by a prior inconsistent statement or showing that he, that was false. But where, where was it that he said something or did something that would allow an impeachment other than for truthfulness? Your Honor, I can't point to it. I couldn't either. I didn't see anything directly. I didn't testify one way and then he could be impeached by an inconsistent statement. So, okay. You may ask my question. Isn't it really propensity evidence? You've had knives before. Ergo, chances are very good that you had a knife this time. Your Honor, it was our position that based on the existence of prison rules and regulations regarding knife possession that it should have come in in the first place under 404B but it did come in as impeachment evidence but in this instance, in this case, based on the record as a whole even that we believe it survives an abusive discretion standard but nonetheless he was not deprived of a substantial right to a fair trial. There was ample evidence in the record to support the jury's verdict and perhaps more importantly from determining whether or not he had a fair trial, he had a full and fair opportunity to present his case. The jury made its decision and that Mr. Goldberg, wasn't a key factor whether he had a knife or didn't have a knife? Yes, sir. And didn't the admission of this prior instance where he had possessed a knife didn't that go right to the crux of the case? And doesn't that influence this one way or the other whether there was an abusive discretion that was harmful error as opposed to not harmful error? Your Honor, his possession or non-possession of a knife was very harmful. But regarding the harmfulness or harmlessness, it's important to remember as Judge Jornan mentioned that the existence of the video and in fact the last thing the jury heard was not this testimony. It wasn't the disciplinary reports in the case but it was in fact the video. The video which was brought in by the appellant was the last thing that the jury saw. And not only did they see it as the last piece of evidence before they went to deliberations but the record reflects that they brought it into deliberations with them. So they saw it twice. Mr. Peterson also testified on his own behalf. He presented five witnesses two of whom were ultimately able to testify about the absence of a knife. He cross-examined the appellees including regarding two of the witnesses about the weapons issue. He also cross-examined Mr. Thompson who was a witness that the appellees had brought in to impugn the implicitly the credibility of the four of the five eyewitnesses for appellant who had testified that they were in cells other than where they were assigned to. I know this is not an issue that you had anything to do with but it's on appeal so I'll give you a chance to respond to it. Given all the conversations we're having about these issues isn't this a case where it might have been a good use of the district judge's discretion to appoint counsel for Mr. Peterson? Your Honor no because the decision would have been made prospectively. The standard under the appellant was in a position to present the essential merits of his claim and that is almost exactly the finding that he made in his order denying the appointment of counsel in the record tab 65. Prior to trial the appellant had already sought discovery, filed a motion to compel, obtained the court assistance in locating two of the appellees that he had difficulty locating. Well let's talk about that for a second. The district court I think generously issued a subpoena to a witness and the subpoena was returned in a way that the witness was going to show up the day after the trial ended. Wouldn't a lawyer have been able to make sure that that didn't happen? Perhaps Your Honor but as the case law recognizes in Bass both I think cited by both parties of course an attorney might have helped but that's not the standard. Did the judge abuse his discretion in deciding before the trial if he would if it appeared that he would be able to present the essential merits of his claim and add to that particular witness Officer Snakey he came onto the scene after the incident in question so he would not have been able to testify to the precise incident in question. It would have been largely duplicative of the video that is narrated by Officer Hasenstab another corrections officer who then that was the last thing that the jury had before them. Officer Hasenstab as he's escorting Mr. Peterson away from the incident repeatedly narrating his description of the events as he understood them and not mentioning the existence of a knife. The appellant had his chance to present his side of the story. He had a fair trial perhaps not a perfect one but that was not the standard and that's why this jury's verdict and this trial's court's judgment was fair and should be affirmed. Let's talk about the jury instruction. Where did that jury instruction come from? Your Honor that jury instruction was based on the truism of 1983 case law that liability is an essential element of any claim. Yes. It doesn't tell you how to get there. You can have a conspiracy right? You can have a 1983 conspiracy. You can have aiding and abetting liability in some rare circumstances under 1983. You can have joint action in concert under 1983. So where do you get this jury instruction that says that an individual has to be the not a but the proximate cause of injury? Your Honor that in substance is very similar to the 11th Circuit pattern jury instructions which was also given to the jury and the basis for both of these would be the Zeitler case which is directly in the commentary. And regarding this instruction not only was it reflective of the law but it's reflective of the particular evidence in this case. Mr. Peterson didn't raise any of these issues below obviously but even looking at these things in a vacuum the evidence showed that Mr. Peterson testified that at least four or five people stomped or kicked on him. He was not arguing some sort of aiding and abetting type of liability. Let's talk about what the district judge initially thought about your theory. The district judge initially said it was and I think your colleague quoted him correctly he said it was quote insane unquote to believe that if someone was being held down in a way that he or she couldn't see what was happening was being beaten by two or three or four people and couldn't identify the single blow that broke his arm that he or she could not impose liability. Why was the district judge wrong in his initial characterization of your position? Your Honor I see my time is up but if I could answer your question I would appreciate it. Sure. Thank you Your Honor. The answer to that is twofold. First that when he made that when the trial court made that statement it was with respect to a directed verdict motion. As the record reflects there was enough evidence to get this issue to a jury. A directed verdict doesn't say that. It went to the jury. They made their decision. And second that it was specifically applicable because that was not the evidence showed multiple possible outcomes. For example Officer Blanton had testified that while all this is going on he just went and protected the keys and essentially stayed out of the incident regardless of the level of force used. It would have been unfair to punish him for any misconduct that the jury might have found for the defendants. The jury ultimately had sufficient evidence before them to have a fair and impartial decision and they made their decision. He may not have had a perfect trial but he had a fair one and therefore the jury's verdict and the trial court judgment should be affirmed. Unless Your Honors have any further questions. Thank you Your Honor. Thank you. Thank you Your Honors. A few brief points on rebuttal. First Your Honor, the defendants point to Zalter v. Wainwright as the basis for the jury instruction that they claim was properly given. Zalter v. Wainwright was an 11th Circuit case based on the theory of respondeat superior seeking to hold a prison guard vicariously liable for the acts of a correctional officer. That was not the theory of Mr. Peterson's case and thus relying on that case as a basis for this jury instruction was improper. Well his theory was each of the defendants acted and insulted him, correct? They acted in concert, yes Your Honor. And it was not just the breaking of the arm but it was the assault itself. Matter of fact he couldn't identify who broke his arm, doesn't necessarily undo his case because it was a general assault. He was kicked when he was down, etc. So, and we had two witnesses at least two witnesses who could identify those officers. So how was he how was it so insane that he couldn't identify who actually broke his arm? Your Honor, again Mr. Peterson was on the ground with his head covered in the fetal position while being kicked by four to five pairs of feet. And four or five pairs of feet account for all the defendants? Yes Your Honor. So they would all be, under that circumstance if the jury accepted his testimony, they would all be responsible for the assault? Yes Your Honor. Assuming the jury was instructed on joint liability. They were not. They were only instructed on... Did Mr. Peterson allege joint and several liability? Your Honor, the facts of this case show very clearly that Mr. Peterson was alleging that the guards acted jointly. And while he may not... I don't recall seeing that Your Honor, while Mr. Peterson... Did they all attack him? Assaulted him? Mr. Peterson's theory of liability is that five prison guards acted in concert to cause one indivisible injury, the breaking of his arm. This was his theory. And while he may not have used the proper terminology in framing this claim, the facts of this case clearly lend themselves to that jury instruction. Your Honor, I would also like to briefly point to the defendant's claim that Mr. Peterson quote, ably represented himself at trial. The facts of this... I read this record twice and I think he did a commendable job. He cross-examined all the witnesses at some length. Seemed like he knew exactly what was going on. The judge helped him from time to time in explaining what the law was. Yes, Your Honor. I thought he did a better job than a lot of lawyers I've seen would do. Yes, Your Honor. And while there is no arguing that Mr. Peterson did as good of a job as he could have done, the facts of this... What would a lawyer have done better on this record than he did? Your Honor, I'll point you to two specific shortcomings in Mr. Peterson's case. The first is that Mr. Peterson attempted to plead a delayed medical care claim because he sat in solitary confinement for two weeks with a broken arm before it was treated. Oh, you're talking about another matter altogether, the medical matter. I'm talking about the assault. Your Honor, in direct response to the assault, there was conflicting testimony presented by the prison guards themselves regarding the knife. Mr. Peterson was not able to cross-examine the witnesses effectively to bring that to the jury's attention. Your Honor, there was also a number of pieces of evidence that Mr. Peterson sought to obtain, including videotapes from within the cell block that Mr. Peterson believed would have shown that he never had a knife. He requested these. They were not turned over. He filed a motion... Do they exist? It's unclear, Your Honor. He thinks they exist. We don't know for sure. Yes, Your Honor, and Mr. Peterson filed a motion to compel discovery to obtain those tapes, and the judge denied it seven months later, claiming that Mr. Peterson filed it too early for some and too late for others. In this case, that would have been incredibly probative evidence that Mr. Peterson did not have a knife had he obtained the video evidence that he believed would exonerate him. Your Honor, given these facts, had counsel been appointed to Mr. Peterson, he would have been able to secure evidence or, if not, obtain a scoliation sanction or an adverse inference for the jury to understand why that evidence was so important. I think we have your case. Thank you, Your Honor. I appreciate it. You're taking it. Houston v. City of Atlanta.